# EXHIBIT A

5470447v.1

RECEIVED/FILED
SUPERIOR COURT

**Zimmerman Weiser & Paray LLP**
**226 St. Paul Street**
**Westfield, New Jersey 07090**
**(908) 654-8000**

MAY 1 2 2014

SOMERSET COUNTY
DEPUTY CLERK

Attorneys for Plaintiff

| | |
|---|---|
| BRIDGEWATER WHOLESALERS, INC., : | SUPERIOR COURT OF NEW JERSEY |
| : | LAW DIVISION: SOMERSET COUNTY |
| : | DOCKET NO: |
| Plaintiff, : | |
| : | |
| vs. : | Civil Action |
| : | |
| PENNSYLVANIA LUMBERMENS : | |
| MUTUAL INSURANCE COMPANY, : | **COMPLAINT AND JURY DEMAND** |
| : | |
| Defendant. : | |

Plaintiff Bridgewater Wholesalers, Inc. ("Bridgewater"), by way of Complaint against Defendant, says:

## PARTIES

1.       Bridgewater is a corporation based in Branchburg, New Jersey.

2.       Upon information and belief, Pennsylvania Lumbermens Mutual Insurance Company ("PLM") is a mutual insurance company based in Philadelphia, Pennsylvania.

## VENUE AND PERSONAL JURISDICTION

3.       Under R. 4:3-2 (a), venue is appropriate in Somerset County because Plaintiff is based in Somerset County.

4.       Upon information and belief, PLM conducts significant business in the State of New Jersey.   Personal jurisdiction rests as against PLM given PLM is authorized to provide insurance products to businesses located in New Jersey.  In addition, during the relevant time period the policy in question was negotiated and procured by BWI's New Jersey-based broker.

## BACKGROUND AND FACTS

**Bridgewater**

5.      Plaintiff is a supplier of specialty millwork to independent retail establishments. The primary product produced by Plaintiff is wooden doors – a product that was in especially high demand after the catastrophic Super Storm Sandy ("Sandy") hit the tri-state area.

**PLM Policy**

6.      Defendant PLM sold an insurance policy to Bridgewater (Policy No. 29-S180-01-12) with a policy period of June 1, 2011 to June 1, 2013 ("the PLM Policy").  Although BWI purchased $1 million in flood insurance with PLM, this matter does not involve any flood issues. Rather, the claim involves PLM's failure to make full payment on BWI's loss of income due to actual physical damage on Bridgewater's property.

**Hurricane Sandy**

7.      On October 29, 2012, Sandy made landfall in New Jersey and had a significant impact to BWI.  Due to Sandy, BWI sustained significant loss of income and damage to business personal property.  The loss of income commenced on October 29, 2013 and was promptly reported to PLM under the Policy.  Specifically, BWI's loss of income arose from the lack of communication services.  BWI's on-premises communications systems were suspended when Sandy's winds caused an outdoor pole to get knocked down and cause damage inside BWI's premises. All of BWI's premises were impacted from this loss of communications services.

8.      At no point in time did any PLM claims adjuster – whether employed by PLM or hired as an outside independent claims adjuster, ever actually visit the BWI site to view the cause of the loss.

**Bridgewater Sandy Reported Claim**

9.      PLM promptly provided a declination on this claim – but that declination only relied on a single coverage grant.  Specifically, on or about January 28, 2013, PLM forwarded a letter from a Zurich claims examiner denying coverage under the Equipment Breakdown Protection Coverage Form (EB0020 ED).  This letter lists "the occurrence" as "Damage to EDP equip, telephone system and related income loss."  According to Zurich – acting on behalf of PLM:  "Due to the lack of utility power to operate the manufacturing portion of the operations and damage to their fiber optic cable the claimant has presented a claim for loss of income."  In disclaiming coverage, Zurich, on behalf of PLM, relied solely on Exclusion 15 (Windstorm or Hail).

10.      Not satisfied with progress on the claim, BWI urged PLM to reevaluate coverage under the Policy.  PLM did reconsider and provided full coverage for the physical damage to the EDP equipment and telephone system.  PLM also provided loss of income coverage but limited such coverage to that provided under the PLM Policy's Premier Pak coverage grant – and then limited that total payout to only $15,000.

11.      The property loss payment was made by PLM on or about March 4, 2013 for damaged business personal property and was in the amount of $13,737 (after a $1,000 deductible).  This payment was for the damage to the EDP equipment and telephone system disclaimed in the January 2013 Zurich letter. The check states "Payment for Equipment Damage".

12.      The second payment by PLM was made on or about May 16, 2013 for "Loss of Income – Off Power Failure" under the Premier Pak Endorsement and was in the amount of

$15,000.

13.     No other payment was made under this claim despite repeated efforts by BWI to

obtain full payment on BWI's loss of income.

14.     According to a June 5, 2013 email from Nancy Lindstrom, PLM's independent

adjuster: "Any coverage for Business Income would be provided under the SLP3 Form [Premier

Pak] which allows a maximum recoverable amount of $15,000.00...no other payment will be

forthcoming relating to the Business Income for the properties listed on the applicable policy."

15.     PLM's independent claims adjuster argued the "on premises" damage caused to

the communications system was not covered other than by way of the Premier Pak given that

"this fiber optic cable is dependent on the utility services provided by PSE&G in order to be

operational."

16.     PLM's independent claims adjuster improperly excluded coverage available under

the Policy when it adopted the following position: "[a]ny coverage for Business Income would

be provided under the SLP3 Form which allows a maximum recovery for Business Income of

$15,000.00 for any loss and damage that results from off-premises power outage."

17.     PLM's position is fatally flawed given that it assumes the loss of income portion

of this claim is due to "off premises" power failure when there has always been property damage

which took place on BWI's premises.  In effect, PLM has completely disregarded the fact

necessary physical repairs to BWI's communications system took place inside BWI's premises.

18.     PLM's independent adjuster, Jerry Quartarolo of RGA Claims Management,

emailed BWI on May, 30 2013 with a copy to PLM claims adjuster, Nicholas Kaz, to state

PLM's position:  "This cable is dependent on the utility service provided by PSE&G in order to

communicate [and] could have been repaired immediately if there was power to the building." PLM cannot feign ignorance of this unreasonable position given that Mr. Quartarolo points out that "[t]his information is included in my report to PLM."   Suffice it to say, this claims posture was and continues to be improper given that such a strained and contrived construction of the Policy – one which ignores the actual cause of the loss, ignores PLM's duty of good faith implicit in the Policy.

19.    Not happy with this contrived thinking, PLM's broker had numerous conversations with PLM's independent claims adjuster.  Unable to get anywhere with PLM's independent claims adjuster the broker reached out directly to PLM.  To that end, the broker sent an email on September 25, 2013 to Mr. Kaz.  Specifically, she wrote:

> As you know our mutual insured, Bridgewater Wholesalers, Inc. submitted a claim for Loss of Income due to the 10/29/12 Sandy Loss.  This initial documentation was sent to the adjuster, Jerry Quartarolo from RGACM on 4/11/13.  Jerry had requested this information after we established that the loss of income was due to the inability to communicate & complete orders via the loss of Fiber Optic cable on the insured's property.  It was confirmed that the Fiber Optic Cable was damaged directly on the insured's property therefore eliminating the limitation for Off Premises Power.

20.    A Sandy mediation conducted on November 12, 2013 yielded no results.  This is not surprising given that at the mediation PLM admitted to not reviewing the eight-page confidential mediation statement and forensics report supplied to PLM on October 23, 2013 by BWI's counsel.

21.    The only actual declination from PLM was sent out on <u>March 19, 2014</u> in an eight-page letter written by Robert H. Belt, Jr., PLM Claims Consultant.  This was the first time any policy language was cited to purportedly justify its prior declination.  Indeed, Mr. Belt first appeared as a claims handler on the BWI claim at the mediation in November 2013.

22.    Mr. Belt's March 19, 2014 declination completely ignores the fact PLM previously made two payments under this claim and that such payments serve as admissions by PLM that the loss of income claim is covered.

**Coverage Pursuant to Business Interruption Coverage Grant**

23.    The Policy provides loss of income coverage by way of its Business Income (and Extra Expense) Coverage Form (CP 00 30 06 07) – a specific coverage grant that has been ignored by PLM. By paying under the Premier Pak Endorsement and taking the position that the failure "originates" away from the described premises, PLM seeks to avoid paying on this claim by applying Exclusion e. Utility Services found in Causes of Loss – Special Form (CP 10 30 06 07). Such exclusion does not apply given that the damages sustained to the premises involved processing equipment and not equipment to supply utility services.

**Coverage Pursuant to Premier Pak Coverage Endorsement**

24.    BWI previously sought payment on each of the seven premises impacted by the loss of utility services covered under the Premier Pak Endorsement. All premises set forth in the Policy are protected under the Premier Pak Endorsement. On July 15, 2013, PLM sent an email declining to provide coverage for each of the impacted premises given PLM considered the impact to each of these premises to only constitute a single "occurrence". Specifically, PLM wrote: "The language is very clear that the most we will pay is $15,000 per occurrence; I see no other reasonable interpretation. This claim is distinguishable from the out-of-state cases that you cite because Super Storm Sandy is one event. Super Storm Sandy is the single event that caused the damages, and PLM has already paid the maximum allowable under the policy, regardless of the locations."

25.     Unfortunately, PLM conflated the term "event" with "occurrence" and in so doing applied an overly restrictive interpretation of the Policy.  BWI agrees that the Premier Pak's limit for loss of income is $15,000 per occurrence.  That relevant language is clear and unambiguous. It is BWI's position, however, that each premises sustained a separate occurrence covered under this endorsement.

26.     PLM's declination disregards the fact that the PLM Policy does not define the term "occurrence".   And, Merriam-Webster defines "occurrence" as "something that happens." When that commonly understood definition is applied to our facts, namely, "loss of services has happened" to each of the covered premises, coverage becomes readily apparent.  Given that the policy language supports two meanings, one favorable to PlM and the other to BWI, the interpretation favoring coverage should be applied.

## COUNT I

## BREACH OF CONTRACT

27.     BWI repeats each of the allegations contained in paragraph 1 through 26 of this Complaint with the same force and effect as if fully set forth herein.

28.     BWI has complied with all terms of the PLM Policy, including making timely payment of the premium charged by PLM.

29.     PLM was contractually obligated to provide coverage under the PLM Policy unless a claim was excluded or limited by express terms.

30.     The PLM Policy does not exclude or limit coverage for at least $1,750,000 in lost income.  The bulk of such lost sales derive from orders never filled and directly resulting from Sandy's devastation to the region and the need for wooden doors in the storm's aftermath.

31.     The PLM Policy does not exclude or limit coverage for BWI's business income loss.

32.     PLM's failure to make timely payment on the full Sandy claim tendered by BWI is in breach of the PLM Policy.

33.     BWI has sustained significant damages as a result of PLM's breach of the PLM Policy.

## COUNT II

## VIOLATIONS OF THE IMPLIED
## DUTY OF GOOD FAITH

34.     Plaintiff repeats each of the allegations contained in paragraph 1 through 33 of this Complaint with the same force and effect as if fully set forth herein.

35.     By engaging in the course of conduct described in Count I of the Complaint, PLM has breached the implied covenant of good faith and fair dealing inherent in all contracts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bridgewater Wholesalers, Inc. demands judgment against Defendant Pennsylvania Lumbermens Mutual Insurance Company as follows:

(a)    Judgment on Counts I and II;

(b)    Compensatory, direct and consequential damages in an amount to be determined at trial but in no event less than $1,750,000;

(c)    Pre- and post-judgment interest;

(d)    Costs, disbursements and attorney's fees;

(e)    Punitive damages; and

(f)    Such further and additional relief as to the Court deems just and appropriate.

Zimmerman Weiser & Paray LLP
Attorneys for Plaintiff

By: _____
PAUL E. PARAY

DATED: May 12, 2014

## DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE that Paul E. Paray, has been designated as trial counsel in the within matter pursuant to *R.* 4:25-4.

## JURY DEMAND

PLEASE TAKE NOTICE that Plaintiff hereby demands a trial by jury on all issues so triable.

## CERTIFICATION

I hereby certify pursuant to *R.* 4:5-1 that this matter is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.  I further certify that I am unaware of any other party who should be joined in this action.

PAUL E. PARAY

DATED:  May 12, 2014

- 10 -